IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AMONDOU FOSTER, DERRICK MAYES AND MICHAEL CALHOUN, ON BEHALF OF THEMSELVES AND ALL OTHER PLAINTIFFS SIMILARLY SITUATED, KNOWN AND UNKNOWN,<br><br>    Plaintiffs,<br><br>    v.<br><br>WESTERN PETROLEUM EXPRESS, INC., d/b/a SPEEDWAY LUBE EXPRESS AND PIT STOP 500, PETROLEUM PRODUCTS, INC., d/b/a PIT STOP 500 AND JASON PROUDFOOT, INDIVIDUALLY,<br><br>    Defendants. | N<u>o.</u> 1:20-cv-5402<br><br>**Hon. Sara L. Ellis**<br>**U.S. District Court Judge, Presiding**<br><br>Hon. Jeffrey I. Cummings<br>Magistrate Judge |

**PARTIES' JOINT MOTION FOR**
**COURT APPROVAL OF FLSA SETTLEMENT**

Plaintiffs Amondou Foster, Derrick Mayes and Michael Calhoun and opt-in Plaintiffs Brandon Riley, Marcell Washingston, Peter Davis, Lawrence Coleman Derick Wells, Dennell Wright, Robert ware and Leo Pitcher ("Plaintiffs") and Defendants Western Petroleum Express, Inc. d/b/a Speedway Lube Express and Pit Stop 500, Petroleum Products, Inc. d/b/a Pit Stop 500 and Jason Proudfoot (collectively, "PS500") (collectively, the "Parties") jointly move this Court to approve the Parties' settlement of Plaintiffs' claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201, *et seq.,* Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105/1, *et seq* and the Chicago Minimum Wage Ordinance ("CMWO"), § 6-105-040 of the Municipal Code of Chicago. The terms of the settlement are fair, reasonable, and resolve a *bona fide* dispute between the Parties. In support of their Motion, the Parties state as follows:

1. On September 11, 2020, Plaintiffs Amondou Foster, Derrick Mayes and Michael Calhoun filed this lawsuit alleging that Defendants violated the FLSA, IMWL and CMWO by failing to pay her overtime wages worked. Dkt. 1.

2. On October 16, 2020, Defendants answered the Complaint. Dkt. 12.

3. Defendants denied the allegations and asserted they appropriately compensated Plaintiffs for overtime.

4. Since the outset of this case, the Parties have worked collaboratively and in good faith to resolve the matter without the excessive time and cost of contested litigation. As a result of the Parties' discussions, the Parties agreed to collective action certification of Plaintiffs' claims.

5. On May 7, 2021, the Parties filed their agreed to stage-one conditional certification of the Named Plaintiffs' FLSA claims and issued notice to putative class members pursuant to 29 U.S.C. §216(b). Dkt. 26. This Court granted the Parties' Motion. Dkt. 28.

6. As a result of the collective action Notice process, Plaintiff received and filed the consents of nine (9) opt-in Plaintiffs, bringing the total number of plaintiffs to 12.[1]

7. Following the closure of the opt-in period, Defendants discovered additional contact information for putative class members, leading the Parties to request the Court to reopen the opt-in notice period for an additional 30 days. Dkt. 42, 44.[2]

8. As the Parties worked through resolution, this Court granted the Parties' multiple requests to extend the discovery deadlines.

---

[1] Plaintiff Martin Sanders, whose opt-in consent was filed on August 2, 2021, has been unresponsive to Plaintiffs' counsel over the course of the Parties' settlement discussions. As a result, Mr. Sanders is not among the settling Plaintiffs. Plaintiffs' counsel continues attempts to reach Mr. Sanders. Should Plaintiffs' counsel continue to be unsuccessful in reaching Mr. Sanders regarding settlement of his claims, they anticipate moving to withdraw as Mr. Sanders' counsel.

[2] No additional class members returned consent forms during the second notice period.

9.      Prior to reaching a settlement, counsel for Plaintiffs and Defendants conducted thorough investigations into the merits of and defenses to the potential claims through extensive informal discovery, where Defendants produced a large volume of documents and other records available to them and in their possession (including time and pay records, Plaintiffs' employees files, etc.). With this information, all Parties had the ability to fully analyze the claims of Plaintiffs and to conduct and exchange damage calculations for Plaintiffs. Therefore, the Parties have sufficient information to agree to a settlement.

10.     The Parties have exchanged information and documents and engaged in targeted settlement negotiations over the course of about four (4) months. Plaintiffs and Defendants exchanged several settlement proposals and counter-offers. Eventually, the Parties agreed to a settlement, which includes resolution of Plaintiffs' damages and Plaintiffs' attorneys' fees. The settlement contemplates all damage components, including underlying unpaid overtime, FLSA liquidated damages and/or IMWL or CMWO treble damages and IMWL statutory interest.

11.     The total Settlement Amount is $182,945, inclusive of attorneys' fees and costs, as specified in Section 8 of the Settlement Agreement. The Settlement Amount for Plaintiffs include underlying money for Plaintiffs' claimed overtime wages and additional, negotiated liquidated and/or treble damages and statutory interest applicable under the FLSA, IMWL and CMWO. The proposed Settlement Agreement contains mutual releases of claims, and the Parties seek dismissal of the entire lawsuit, initially without prejudice at the time the Court enters an order approving this settlement, and with automatically convert to dismissal with prejudice thirty (30) days after delivery of the Settlement Amount to Plaintiffs' counsel.

12.     Copies of the executed Settlement Agreements are attached hereto as **Group Exhibit 1**.

13. Court approval of FLSA settlements is necessary to effectuate a valid and enforceable release of FLSA claims asserted. *Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 306 (7th Cir. 1986); *Larkin v. CPI Corp.*, No. 10-cv-411-wmc, 2011 U.S. Dist. LEXIS 127680, *2 (W.D. Wis. Nov. 3, 2011); *Lynn's Food Stores, Inc. v. Dep't of Labor*, 679 F.2d 1350, 1352-53 (11th Cir. 1982). Under the FLSA, employees may settle their claims if the parties agree on the terms and the court approves the settlement as "a fair and reasonable resolution of a *bona fide* dispute over FLSA provisions." *Larkin*, 2011 U.S. Dist. LEXIS 127680, at *2 (*citing Lynn's Food Stores, Inc.*, 679 F.2d at 1355); *see also Hernandez v. Cameo Invs., LLC*, No. 19-cv-356-wmc, 2019 U.S. Dist. LEXIS 186445, *3 (W.D. Wis. Oct. 28, 2019).

14. If a settlement in a FLSA suit reflects a reasonable compromise, the court may approve the settlement "in order to promote the policy of encouraging settlement of litigation." *Lynn's Food Stores, Inc.*, 679 F.2d at 1354. A presumption of fairness should attach to the proposed settlement. *See Lynn's Food Stores, Inc.*, 679 F.2d at 1354 (recognizing that courts rely on the adversary nature of a contested FLSA case resulting in settlement as an indication of fairness).

15. In determining whether a settlement is fair and reasonable, courts consider non-exclusive factors such as: "(1) the strength of plaintiffs' case compared to the terms of the proposed settlement; (2) the likely complexity, length and expense of continued litigation; (3) the amount of opposition to settlement among [a]ffected parties; (4) the opinion of competent counsel; and (5) the stage of the proceedings and the amount of discovery completed." *Young v. Rolling in the Dough, Inc.*, No. 1:17-cv-07825, 2020 U.S. Dist. LEXIS 35941, at *9 (N.D. Ill. Feb. 26, 2020) (citing Synfuel Techs., Inc. v. DHL Express (USA), Inc., 463 F.3d 646, 653 (7th Cir. 2006)).

4

16. The Parties' settlement is fair and reasonable and meets the applicable factors considered by courts. The settlement appropriately factored in the complexity, risk, expense, the uncertainties for a favorable outcome, and range of reasonableness of the settlement in light of the best possible recovery. The Parties recognized the risks inherent in proceeding with the litigation. Defendants recognized its potential exposure if Plaintiffs prevailed at trial. Plaintiffs recognized the risk that they could lose on summary judgment or at trial and not recover all or any alleged damages. The settlement is also reasonable given that the Parties reached a resolution prior to the commencement of formal discovery. *See*, *e.g.*, *Young*, 2020 U.S. Dist. LEXIS 35941, at *13 ("Early resolution of claims is encouraged by district courts.").

17. Additionally, the settlement is within the range of possible recovery. As in many wage and hour claims, the precise nature and amounts of recoverable damages are uncertain. Here, particularly where Plaintiffs' allegations revolve around unrecorded work time and cash payments, even if a trier of fact ultimately found liability, a range of possible damages existed depending on factors including, but not limited to, the number of alleged overtime hours worked, the amount of Plaintiffs' alleged damages, the Parties and their witnesses' credibility, testimony, Defendants' knowledge, willfulness and good faith, and whether the statute of limitations of the federal FLSA claim should be extended to three years and/or if FLSA liquidated damages should be assessed.

18. Should this matter have continued in the absence of a negotiated resolution, the Parties may have engaged in extensive discovery as to Plaintiffs' claims and Defendants' defenses to those claims. The Parties may potentially have moved for summary judgment and, to the extent any such dispositive motions were denied, the case would have proceeded to trial. If Plaintiffs prevailed on their claims, Defendants would potentially be faced with the prospect of a verdict against them and the obligation to pay damages, attorneys' fees and costs. If Defendants prevailed,

Plaintiffs faced dismissal of their claims and no recovery.

19. The Agreement is the product of arm's-length negotiations by Plaintiffs and Defendants, with both sides represented by experienced counsel during the proceedings. It provides relief to Plaintiffs and eliminates the risks the Parties would bear if this litigation continued.

20. The attorney fee-shifting principles of the FLSA, IMWL and CMWO have been honored in these negotiations and this settlement and are reflected in the Agreements upon which the Parties seek approval. After extensive negotiations, the Parties have fully resolved all issues related to Plaintiff's attorneys' fees and costs with Defendants, as reflected in the attached Settlement Agreements. Defendants have agreed to pay Plaintiffs' counsels' negotiated, reduced lodestar fee of $30,000.[3] This amount was achieved by way of ongoing negotiations and good faith effort to resolve the case by way of settlement. This amount includes Plaintiffs' counsels' costs.

21. Furthermore, the lodestar fee paid by Defendants to Plaintiffs' counsel was separately negotiated without regard to Plaintiffs' compensation. *See Bonetti v. Embarq Management Company*, 715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009) (wherein the Court found that where fees are negotiated separate and apart from the compensation to Plaintiff, the court should approve the settlement).

22. The terms of the settlement, as contemplated in the Settlement Agreement also reflect Plaintiffs' counsels' additional contractual fee earned by way of a fee agreement entered into with each of the Plaintiffs, which generated an additional fee in the aggregate amount of

---

[3] Plaintiffs' counsels' lodestar fees were based on following hourly rates of Plaintiffs' counsel and paraprofessional: Jodi S. Hoare (paralegal), $145.00 per hour; Samuel D. Engelson (Associate Attorney), $300 per hour, and John W. Billhorn (Senior Attorney), $575 per hour. Plaintiffs' counsel respectfully requests that this Court approve these reasonable rates. These rates have been approved in this District by different Judges on several occasions, including just recently on May 11, 2022. See *Borek-Allison v. Atosa Catering Equipment, Inc.*, Case No. 21-cv-3779.

$45,736.25. The total settlement amount to be paid by Defendants remains $182,945. Defendants do not oppose these additional fees with regard to Plaintiffs' separate attorneys' fee agreements with their counsel.

23. Pursuant to Supreme Court and Seventh Circuit authority, it is proper for Plaintiffs' counsel to receive fees by way of a negotiated lodestar amount under the fee-shifting provisions of statutes like the FLSA, as well as receive a reasonable fee by way of private contractual agreements with counsel's clients. See *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 640 (7th Cir. 2011) ("The contingent fee that an attorney earns from his client and the statutory fee that an attorney recovers . . . . represent distinct entitlements . . . . [and] the Supreme Court has recognized that private fee arrangements and statutory fee awards can coexist. *Venegas v. Mitchell,* 495 U.S. 82, 87, 110 S.Ct. 1679, 109 L.Ed.2d 74 (1990)."). *Id*. at 640, 642.

24. This District has previously approved Plaintiffs' counsels' fees consisting of both a negotiated, reduced lodestar and fees arising out of private contractual agreements with clients on numerous occasions. See *Jones v. Cook County Government LE, d/b/a Stroger Hospital of Cook County,* Case No. 18-cv-07577; *Esparza, et al. v. Construction & Design Group, Inc., et al.*, Case No. 20-01707; *Murrell, et al. v. Mufflers 4 Less III, Inc.*, Case No. 19-cv-03238; *Borek-Allison v. Atosa Catering Equipment, Inc., et al.*, Case No. 21-03779; *Chambers v. Center for Addictive Problems, Inc., et al.*, Case No. 21-cv-00635.

25. Given these circumstances, a presumption of fairness should attach to the proposed settlement. *See, e.g.*, *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1354-55 (11th Cir. 1982) (to approve FLSA settlement, district court must conclude that it fairly and reasonably resolves a *bona fide* wage dispute and that the lawsuit provided the necessary adversarial context to protect the employee's interests from employer overreaching); *Ladegaard v. Hard Rock Concrete Cutters,*

7

*Inc.,* No. 00 C 5755, 2001 WL 1403007, at *6 (N.D. Ill. Nov. 9, 2001).

26. For all of these reasons, this Court should conclude that the proposed settlement reflects a fair and reasonable resolution of a *bona fide* dispute and approve the settlement.

WHEREFORE, Plaintiffs and Defendants respectfully request that this Court approve the Parties' negotiated settlement and Settlement Agreement and dismiss all of Plaintiffs' claims in this lawsuit, first without prejudice after Court approval of this settlement, and with prejudice thirty (30) days after Defendants tenders final payment to Plaintiffs and Plaintiffs' counsel as provided in the Settlement Agreement.

Dated: July 25, 2022                           Respectfully submitted,


                                               /s/ Samuel D. Engelson

                                               Samuel D. Engelson
                                               John W. Billhorn
                                               Billhorn Law Firm
                                               53 W. Jackson St., Suite 1137
                                               Chicago, Illinois 60604

                                               *Attorneys for Plaintiffs*

                                               /s/Justin DeLuca

                                               Justin DeLuca
                                               Attorney for Defendants
                                               Ellis Legal
                                               200 W Madison St,
                                               Chicago, IL 60606

8